UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

NIGEL MARLIN REID, Sr.           )
                                 )
v.                               )    NO. 2:11-CV-283
                                 )    *Greer/Inman*
CHARLIE OSBORN, CHEROKEE HEALTH  )
SYSTEMS, VICTOR VON, BARKLEY     )
BELL, JOYCE WARD, HAMBLEN        )
COUNTY, TENNESSEE, HAMBLEN       )
COUNTY JAIL, ESCO JARNIGAN, KATHY)
MULLINS, TARRECA WEST,           )
MORRISTOWN POLICE DEP'T, COLLEGE )
SQUARE MALL, TONIA TREECE, MARK  )
SMITH, MEHARRY MEDICAL COLLEGE,  )
DEP'T OF CHILDREN'S SVCS., SHERRY)
HILL, ROADRUNNER MARKET, BRIAN   )
RINEHART, ROCK OF AGES BAPTIST   )
CHURCH, and CURTUS HARRIS[1]     )

## MEMORANDUM and ORDER

Nigel Marlin Reid, Sr., brings this *pro se* civil rights action for injunctive and monetary relief under 42 U.S.C. § 1983, against twenty-one defendants, each of whom has allegedly violated his constitutional rights. Plaintiff's application to proceed *in forma pauperis* is **GRANTED**.

### I. Screening the Complaint

Cases filed *in forma pauperis*, such as this one, must be screened under 28 U.S.C. § 1915(e)(2) to determine whether they state a claim entitling a plaintiff to relief or whether they are frivolous or malicious or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th Cir. 1997) (finding that § 1915(e)(2) applies to complaints filed *in forma pauperis* by prisoners and non-prisoners alike), *overruled on other*

---

[1] The Court has corrected plaintiff's obvious misspelling of the names of some defendants, including "College Squar (sic) Mall," "Road runner Markit (sic)" "Mahary (sic) Medical College," "Department of Children (sic) Services" and "Esco Jarnican (sic)." The latter defendant's name was spelled correctly in the body of the complaint.

*grounds by Jones v. Bock*, 549 U.S. 199 (2007). If the complaint does not state a claim or is frivolous, malicious, or seeks damages from an immune defendant, this suit must be dismissed. In performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court examines the complaint in light of these requirements.

## II. Discussion

Plaintiff recounts, in his pleading, several of his encounters with various governmental entities, individuals, businesses, a judge, law enforcement officers, and other officials, which have purportedly resulted in violations of his civil rights. There are problems with the claims asserted in the complaint which call for its *sua sponte* dismissal. The Court has divided plaintiff's allegations, for ease of discussion, into several different categories, with some claims overlapping into several categories.

**A. Standing**

At the outset, the Court must determine whether it has authority over each of plaintiff's claims, since Article III of the U.S. Constitution restricts the jurisdiction of federal courts to "cases" and "controversies." *Markva v. Haveman*, 317 F.3d 547, 557 (6th Cir. 2003). The standing doctrine, which stems from this Article II provision, is implicated by plaintiff's assertions that Hamblen County officers and Morristown police officers have engaged in beatings, rapes, harassment, and stalking, or so he has been told by females and males alike, who presumably have been subjected to these types of misconduct. It is likewise implicated by plaintiff's claim that the Hamblen County Government is liable to him because it is responsible for ensuring that defendant Esco Jarnigan has enough money to build a larger jail to prevent overcrowding so that inmates don't have to sleep on the floor, as is now the case with some 150 - 200 inmates.

In this circuit, a suit under § 1983 is considered personal to the direct victim of the asserted constitutional tort so that only the alleged victim or his estate's representative may litigate a § 1983 claim. *See Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 20000); *Jaco v. Bloechle*, 739 F.2d 239,

2

241 (6th Cir. 1984). Plaintiff does not claim that he was a victim of these alleged misdeeds on the part of law enforcement officials in Hamblen County or in Morristown, Tennessee and, thus, his lack of standing deprives the Court of jurisdiction over claims constructed on the rights of others.

**B. Non-Suable Defendants**

Two defendants named in the complaint are non-suable entities. The Hamblen County Jail is a building and neither it nor the Morristown Police Department are "persons" who can be sued under § 1983. *Monell v. Dep't of Social Servs*, 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (a jail is not a suable entity); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (a police department is not a suable entity). Therefore, plaintiff has failed to state a claim against these two defendants.

**C. Color of State Law**

To be entitled to relief for a civil rights violation under 42 U.S.C. § 1983 , a plaintiff must show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America and (2) that the deprivation was caused by a person acting under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). The conduct of a private defendant is actionable under § 1983 only if the conduct can be fairly attributable to the state, *see Catz v. Chalker,* 142 F.3d 279, 289 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir.1996), and the conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state. The second element is missing from the claims which follow and, in some cases, the first element as well.

**1.** *Claims Against Defendants Charlie Osborn and Cherokee Health Systems*

Plaintiff maintains that defendant Osborn told defendant Cherokee Health Systems not to see plaintiff anymore because plaintiff broadcasted on cable televison the details of an adulterous love affair between his former wife and her now ex-husband.

Cherokee Health Systems is a privately held corporation, not an entity of the State of Tennessee. *See* Tennessee Secretary of State Corporations, online at

3

http://tnbear.tn.gov/ECommerce/FilingDetail.aspx?CN=16512120207004808618402708113501701 7147250251042 (all Internet materials as visited August 15, 2011, and available in Clerk of Court's case file). Thus, defendant Osborn, an employee of a private corporation, was not acting on behalf of the state when he advised defendant Cherokee Health Systems to discharge plaintiff as a patient.

But, even if the state action element of the claim were satisfied, "[a]s a general matter, a State is under no constitutional duty to provide substantive services for those within its border," *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982), such as medical treatment. *Id.* (citing *Maher v. Roe*, 432 U.S. 464, 469 (1977)); *Harris v. District of Columbia*, 932 F.2d 10, 14 (D.C. Cir. 1991) ("[O]ne of the few clear rules in this context is that government officials are under no constitutional obligation to protect or to provide medical services to the general public, even if they know of a particular person's need and regardless of whether that obligation is imposed by state tort law, unless the government has entered into "certain special relationships" with the person.") (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 1004, 1006-07, 103 L.Ed.2d 249 (1989)); *see also K.L. v. Edgar*, 941 F.Supp. 706, 715 (N.D.Ill. 1996) (finding that " a state is not required to provide mental health care to its citizens").

Therefore, the Court concludes that the claims asserted against these two defendants fail on both the state actor and deprivation elements of a valid § 1983 claim.

**2. *Claims against Defendants Tonia Faye Treece, Meharry Medical College, and Mark Smith***

Plaintiff charges that, in September or November of 2008, defendant Treece tried to get plaintiff's probation officer fired because the officer refused to file a charge against plaintiff for a violation of his probation. Some two years later, on November 5, 2010, defendant Treece also had plaintiff arrested for harassment. Apparently, defendant Treece is employed by the hospital affiliated with Meharry Medical College, as plaintiff next contends that he called the facility and spoke with defendant Smith, inquiring as to how any person with mental problems could work for a hospital. In response, defendant Smith asked plaintiff to send a copy of Defendant Teece's conviction by facsimile ("FAX"), assuring him that he (Smith) would launch a confidential investigation into plaintiff's allegations. As it turned out,

4

defendant Treece obtained a copy of the FAX and used it to secure a warrant for plaintiff's arrest for harassment. Plaintiff maintains that defendant Smith is liable to him for Smith's false statement regarding the confidentiality of the FAX. Defendant Treece, so plaintiff suggests, has subjected him to false arrest, reverse discrimination, and age discrimination, and is answerable to him in punitive damages for the mental anguish and loss of income he has sustained.

First of all, defendant Meharry Medical College is not a state actor because it "is the nation's largest *private*, independent historically black institution dedicated solely to educating health science professionals." *See* Meharry Medical College Electronic Handbook for Prospective Students, online at http://www.mmc.edu/students/documents/IntroductiontoMMCHandbook.pdf (italics added). The conduct of a private defendant is actionable under § 1983 only if the conduct can be fairly attributable to the state, *see Catz*, 142 F.3d at 289 (6th Cir. 1998), and the conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state. Under this criteria, defendant Smith, an employee of this private institution, was not acting under color of state law when he disclosed the FAX sent by plaintiff, which involved defendant Treece's alleged criminal background.

But even if defendant Smith were a state actor, there is no privacy right in "judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491-492 (1975); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) (finding "no constitutional right to privacy in one's criminal record"). There is also an issue of standing with respect to a claim of confidentiality asserted in connection with someone else's criminal record. If plaintiff's challenge is not to the contents of the disclosure, but to the fact that the promise of confidentiality purportedly was broken, this Court is not aware of any case which holds, in a non-prosecutorial, non-contractual context, that a broken promise bears any constitutional consequences or provides for federal redress.

Also, even though defendant Treece allegedly was instrumental in a warrant being issued against plaintiff for harassment, she remains a private individual, and not a state actor. *See Benn v. Universal*

5

*Health System, Inc*., 371 F.3d 165, 1 (3d Cir. 2004) (defendants not state actors though applications they filed led to issuance of warrant authorizing a "severely mentally disabled" person "in need of immediate treatment" to be taken for an emergency examination); *see also Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §[] 1983.").

Furthermore, plaintiff's allegations regarding actions purportedly taken by this defendant in 2008 would be time-barred by the state's one-year statute of limitations which applies to § 1983 civil rights actions filed in Tennessee. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (holding that state limitations statute determines timeliness of § 1983 claims which arose in that state); *Porter v. Brown*, 289 Fed. Appx. 114, 116, 2008 WL 3838227, *2 (6th Cir. 2008) ("[O]ur precedent has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)."). This suit was filed on September 28, 2011, and only claims arising within the one-year period preceding that date are timely.

Because plaintiff has not shown that these particular defendants were acting under color of state law, *Bryant-Bruce v. Vanderbilt University, Inc*., 974 F.Supp. 1127, 1142 (M.D.Tenn. 1997) ("a private hospital and its employees are not typically state actors for the purposes of Section 1983"); because he has failed to show to show a deprivation of a constitutional right; and because his 2008 claim is time-barred, he has no claims against any of these defendants.

**3.** *Claims Against Defendant College Square Mall*

Plaintiff next asserts that defendant College Square Mall, with no reason, put a one-year bond to stop him from shopping there. The complaint alleges that, on February 3 and 4 of 2010, incidents which occurred at the Mall resulted in plaintiff being charged with trespassing and, though he can prove that he was not arrested on either date, he has a bond for trespassing. Plaintiff further alleges that, on

6

January 18, 2011, he called the mall office to inquire as to whether he could come back to the Mall and learned that he would be on bond for another year.[2]

Plaintiff's assertions against defendant College Square Mall fail to allege a constitutional violation because this entity has no connection with the State of Tennessee, but rather is a privately-owned shopping center. *See* CBL and Associates Properties, Inc., online at http://www.cblproperties.com/pag.nsf/CorpSiteByAlphaWeb/College+Square?opendocument. Given the absence of the state-actor component, plaintiff has alleged no actionable § 1983 claim against defendant Mall.

**4.** *Claims Against Defendants Roadrunner Market and Sherry Hill*

This claim arose, so plaintiff alleges, when he walked up to a customer who was pumping gas at the Roadrunner Market and asked the customer if he was aware of the boycott plaintiff had called to protest racism on the part of Roadrunner employees. The customer responded that she (inferentially, defendant Sherry Hill) was his sister. Defendant Hill had her manager get a private citizen's warrant until officers to whom she had reported the incident of criminal trespassing came to assist her.

This defendant business is one of many Roadrunner Markets, which are convenience markets operated and owned by Mountain Empire Oil Company, a private corporation and it does not act under color of state law. Tennessee Secretary of State Corporations, online at http://tnbear.tn.gov/ECommerce/FilingDetail.aspx?CN=204052029073055045001252255185228130 218176231219. Likewise, Sherry Hill, presumably an employee of this private corporation, cannot be deemed to have acted on behalf of the state in calling law enforcement officers to report that plaintiff was engaged in trespassing. But even if she is considered to be a state actor, her questioned conduct occurred on March 15, 2010, meaning that the claim is time-barred since plaintiff's suit was not filed until September 28, 2011—months past the one-year period.

---

[2] To support his claim, plaintiff has attached to his complaint copies of two separate notices which ban plaintiff from "all of mall property" for one-year periods, based, according to the last notice, on plaintiff's "long history of violent behavior," (Doc. 2, Attach. 8 at 3-4). The last notice relates that the ban ends on January 18, 2012, (*Id.*).

For all these reasons, plaintiff likewise fails to state a viable § 1983 claim against these defendants.

**5.** *Claims Against Defendants Rock of Ages Baptist Church and Curtus Harris*

In these claims, plaintiff maintains that he stood for membership in the Rock of Ages Baptist Church, but one church member, defendant Curtus Harris objected, ending plaintiff's effort to join the Church.

Obviously, Rock of Ages Baptist Church is not a state actor, nor is Curtus Harris acting under color of law by expressing his religious beliefs by blackballing plaintiff from joining the Church. The Court also notes in passing that, if either defendant truly was acting under color of state law, this would violate the First Amendment, which prohibits the establishment of religion and which has been interpreted to require that governmental actions have a secular purpose, not advance or disapprove of religion, and avoid excessive entanglements with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).

**D. Conspiracy Claim**

Plaintiff argues, in this claim, that defendants Barkley Bell, Victor Von, Joyce Ward, Esco Jarnigan, Kathey Mullins, and the Hamblen County Government conspired to hold plaintiff in the Hamblen County Jail for six months to prevent plaintiff from campaigning for himself for Governor, as well as for Bobby Davids and Roy Rucker, relatives of plaintiff's who were also candidates for public office, i.e., County Court Clerk and Hamblen County Sheriff, respectively.

A civil conspiracy, as explained by the Sixth Circuit, "is an agreement between two or more persons to injure another by unlawful action. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Here, plaintiff claims that defendants conspired to keep him in jail to prevent him from electioneering for public office, but he has not provided any facts to show that there was "a meeting of the minds" between two or more defendants as to one plan, *see Spadafore*, 330 F.3d 854, to violate his constitutional rights.

Moreover, conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts are insufficient. *Id.; see also Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986) (holding that § 1983 complaint must contain factual basis for claims, skeletal allegations of unconstitutional conduct inadequate). Constructing a constitutional claim against a defendant in a civil rights case requires more than piling one allegation on top of another, as plaintiff has done. *See e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 555-56 (2007) (" [T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). Plaintiff's assertion of the existence of a conspiracy lacks merit, is conclusory, and fails to state a § 1983 claim for relief.

If there are any other claims against Hamblen County, Tennessee, this entity cannot be liable for the constitutional torts of its employees because respondeat superior is not a valid theory of recovery under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Municipal liability will attach only when the execution of the governmental policy or custom inflicts the injury, *ibid.*; that is, it must be shown that "the [City] itself is the wrongdoer." *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). To accomplish this showing, a plaintiff must "establish that an officially executed policy, or the toleration of a custom within the [governmental entity] leads to, causes, or results in the deprivation of a constitutionally protected right." Id. Put simply, Plaintiff must show he has suffered harm because of a constitutional violation and that a policy or custom of the entity—in this case, the County—caused the harm. *Monell*, 436 U.S. at 691. Plaintiff has failed to make this showing and, therefore, all other outstanding claims against Hamblen County likewise fail to state a claim for relief under § 1983.

**E. Immunity**

**1.** ***Claims Against Defendants Judge Joyce Ward, Kathey Mullins, and Tarreca West***

9

As background to his present complaints against the judicial defendant and the Court Clerk defendants, plaintiff first relates that Judge Joyce Ward, on March 15, 2004, did not bind over to the Grand Jury his former wife, defendant Treece, upon plaintiff's affidavit of complaint that she had committed an offense of reckless endangerment; instead, she allowed this "very vilont person" to plead guilty, (Doc. 2, Comp. at 3 and Attach. 1). Plaintiff sued Ward over her conduct in the Treece case, which resulted in the Judge's recusing herself from presiding over all pending and any future cases involving plaintiff, (*Id.*, Attach. 2, Order of Recusal of Feb. 4, 2005). Plaintiff contends that, despite this order of recusal, on September 2, 2010, or perhaps July 8, 2010, Judge Ward heard cases involving five misdemeanor charges against him, which had arisen over a five day period, i.e, from March 15, 2010 to March 19, 2010.

Plaintiff maintains that he was in a "very bad mental state" during that period and was arrested for stopping traffic on the corner of Morris Boulevard and South Cumberland Street by doing a war dance. Furthermore, plaintiff insists he can prove that he was not arraigned on those charges within ten days. Additionally, the fact that he was arrested for three Class C misdemeanors in one day proves, according to plaintiff's lights, that he was not in his right mind. Another of defendant Ward's claimed judicial misdeeds was setting plaintiff's bond at $10,000, an "obsesave" amount, knowing that it should have been no more than $100-$300 and that plaintiff could not afford the bond since he received a disability check, (*Id.*, Compl. at 7). Plaintiff suggests that a bond of ten thousand dollar ($10,000) is appropriate for a defendant accused of a serious felony offense, for example, a Class A through a Class D felony.

Plaintiff next maintains that defendant Kathey Mullins, the former Hamblen County Court Clerk, knew about Judge Ward's recusal and also knew about the so-called conflict of interest, but failed to contact the Administrative Office of the Courts ("AO") in Nashville, Tennessee, at its telephone number, 615-741-2687, to make sure that, due to the conflict, a substitute General Sessions Judge was provided to hear plaintiff's cases. Defendant Tarreca West, who was defendant Mullins' employee and a successful opponent of Bobby Davids, plaintiff's "(Black) cousin," for the office of County Court Clerk,

is alleged also to have known of Judge Ward's "conflict" and of her conduct in setting the excessive bond in plaintiff's case, and she likewise failed to call the AO, after she assumed her elective position as County Court Clerk.

Judges have absolute immunity from liability from damages for actions taken within the scope of the court's jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 364 (1978); *Barnes v. Winchell*, 105 F.3d 1111, 1115-16 (6th Cir. 1997) ("It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages.") (citing, *inter alia, Mireles v. Waco*, 502 U.S. 9, 9 (1991)). Those who act as the judge's designee in performing a function for which the judge would be immune, have quasi-judicial immunity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (extending doctrine to court clerk).

Because defendant Ward was acting within the scope of her jurisdiction is presiding over plaintiff's criminal cases and in setting bond in those cases, she possesses absolute judicial immunity from plaintiff's suit for damages. Likewise, defendants Mullins and West are clothed with quasi-judicial immunity for their alleged failures to call the AO to report what plaintiff characterizes as Judge Ward's "conflict of interest." Traditionally, clerks of court enter judicial orders and opinions into a court's docket—a function which is integral to the judicial process—but do not pass on the wisdom of those orders, much less monitor or enforce orders of recusal. Had these defendants assumed the latter task, which is charged as a constitutional omission by plaintiff, they clearly would have been acting outside their assigned duties and, thereby, might well have forfeited their quasi-judicial immunity.

For these reasons, these three defendants are also immune from plaintiff's lawsuit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (immunity means "immunity from suit rather than a mere defense to liability")

11

**2.** *Claims Against Defendants Barkley Bell and Victor Von*

Defendants Barkley Bell and Victor Von allegedly tried a case against plaintiff on September 30, 2010, though both defendants had an unexplained conflict of interest.

Defendants Bell and Von, the District Attorney and Assistant District Attorney, respectively, are entitled to prosecutorial immunity when acting in their role as the state's advocate in initiating and pursuing a criminal prosecution, including presentation of the state's case at trial. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Supreme Court has interpreted § 1983 as conferring absolute immunity on prosecutors for conduct that is "intimately associated with the judicial phase of the criminal process," see *id*, "because any lesser degree of immunity could impair the judicial process itself." *Malley v. Briggs*, 475 U.S. 335, 342 (1986) (citation omitted).

Because the challenged conduct for which these defendants are being sued is for playing a role in plaintiff's criminal prosecution, defendants Bell and Von are cloaked with prosecutorial immunity from this lawsuit.

**3.** *Claims Against Defendant Department of Children's Services*

The Department of Children's Services, according to plaintiff, has always protected defendant Treece, even though plaintiff has made contentions for many years that she is abusing their son. The Department has always found that the children are safe in defendant Treese's custody.

The Department of Children's Services is an agency of the State of Tennessee. This is significant because the Eleventh Amendment bars an action for damages in a federal court against a State, a state agency, or any of its employees in their official capacities, unless Congress has abrogated its sovereign immunity or the State has expressly waived it. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).

Congress has not abrogated Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332 (1979), and Tennessee has not waived it. *See Gross v. University of Tennessee*, 620 F.2d 109, 110 (6th Cir. 1980). Accordingly, this defendant is entitled to immunity from damages. Even if it were not immune, "[a] citizen's right to petition the government does not guarantee a response to the petition or

the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

**F. Claims Barred by *Heck v. Humphrey***

This category contains plaintiff's allegations against Morristown, Tennessee, and Police Officer Brian Rinehart, who arrested plaintiff on March 15, 2010, in front of the Buffalo Trail Baptist Church, near Defendant Roadrunner Market. Plaintiff maintains that defendant officer did not look at the surveillance video, though (by implication) a video was available and should have been viewed, since that would have been the prudent thing to do in performing a thorough criminal investigation.

The law is settled that, if a judgment in favor of a plaintiff would necessarily imply the invalidity of his state court conviction or sentence, his § 1983 complaint must be dismissed, unless he can demonstrate that the conviction or sentence has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). In other words, "no cause of action exists unless a conviction has been legally eliminated." *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995).

Plaintiff has provided an Individual Summary Report of his arrests and charges, and this document shows that he was arrested on this date by Brian Rinehart and charged with criminal trespassing, (Doc. 2, Attach. 7). Plaintiff has also submitted a copy of an unsigned Criminal Information sheet, charging plaintiff, in Count 1, for criminal trespassing on the Roadrunner Market property, (*Id.*, Attach. 10). By plaintiff's own allegation, this case was heard by Judge Ward, but there is no indication as to the disposition of the charges. If, however, plaintiff was convicted of that charge, then this claim is precluded at this time based on the *Heck* doctrine because a finding in his favor on his complaint, broadly construed, that he was arrested without probable cause, would undermine the conviction. If he was not convicted of the charge, then any claim arising from the arrest on March 15, 2010, would have had to be pursued within one year, or by March 15, 2011. As noted, this case was filed on September 23, 2011. If there was no conviction on the criminal trespassing accusation, the instant claim is barred by the statute of limitations applicable to civil rights actions in Tennessee, as discussed in the next category of claims.

13

## G. Claims Barred by the Statute of Limitations

Remaining in this category of claims are only plaintiff's allegations against defendant Esco Jarnigan, Sheriff of Hamblen County, Tennessee, since the other claims which would be included in the category have been previously discussed and found wanting. Plaintiff asserts that on March 19, 2010, and for two months thereafter, defendant Jarnigan violated plaintiff's constitutional rights by keeping him in jail, despite defendant Sheriff's knowledge that plaintiff was not in his right mind.

As noticed, this suit was filed on September 28, 2011, and only claims arising within the one-year period preceding that date are timely. Tenn. Code Ann. § 28-3-104(a). Since this claim, at the latest, accrued on May 19, 2010, it would have had to be presented in a civil rights action filed no later than May 19, 2011, to be timely. This claim was offered as a federal constitutional violation four months too late and is now barred by the statute of limitations.

## III. Conclusion

Because plaintiff has failed to state a claim against defendants and has sued defendants who enjoy various types of immunity from damages, this lawsuit will be **DISMISSED** by separate order. Based on the above discussion, the Court **FINDS** that any appeal taken in this matter would not be taken in good faith, 28 U.S.C. § 1915(a)(3); therefore, should plaintiff file a notice of appeal, he is **DENIED** leave to proceed on appeal *in forma pauperis*.

Finally, all pending motions are **DENIED** as moot.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE